## LAKE ERIE BOLT & NUT CO v PENN RD CO

Ohio Appeals, 8th Dist., Cuyahoga Co

No 9601. Decided Februray 25, 1929

Messrs. Bulkley, Hauxhurst, Jamison & Sharp, Cleveland, for Bolt & Nut Co.

Messrs. Squire, Sanders & Dempsey, Cleveland, for Penn Rd Co.

**VICKERY, PJ.**

The case on its face seems to be of not much importance, for the amount involved is so small that it would scarcely pay for the time and labor spent in collecting the difference in freight, but apparently there is a deeper motive than this, and that seems to be to have the courts rule differently than the Interstate Commerce Commission has ruled and to have the court fix the rates.

It was claimed by the Pennsylvania Railroad Company that the commodity was a **finished** product and, therefore, entitled to the higher rate, or the rate that the Inspector of the Railway Company claimed it should bear and that, therefore, the plaintiff below was entitled to and did recover the amount of the difference between the two rates.

Now it is well settled that the Interstate Commerce Commission has the right and power to fix the rates of freight and that the courts, when a matter gets into the courts, will follow the rulings of the Interstate Commerce Commission, so far as the rates are concerned. In other words, the courts will not trouble themselves about fixing rates; they will adhere to the rates and compel shippers and others receiving shipments to adhere to the rates adopted and laid down by the Interstate Commerce Commission. So it becomes a question of fact, whether the materials in question came within the one tariff rate or the other, and that will depend upon whether this is a finished or an unfinished product.

Of course, in a way, when a product leaves a particular factory,—when that factory has done all to it that it can do or wants to do,—it is a finished product; like pig iron: it is the finished pig when it leaves the place where it is manufactured, but that does not show that it is a finished product that may ultimately be turned out, so that when the ore is turned into the ingot and the ingot into the bloom and the bloom into the billet, the billet is in a measure the finished product. Now, when that billet was still further rolled to make the nut flat, is that, then, a finished product so that the common carrier would be entitled to charge a higher rate than that charged for billets?

Fortunately we are not left to guess about this matter. The Interstate Commerce Commission in several cases has had this question before it, and we do not think it is any longer a question for the courts to bother with.

In the case of Lancaster Steel Products Corporation vs. Director General, 73 I. C. C. 567, it was held that "nut flat" material was entitled to the same rate as "commodity" or "billet" material. Also: New England Drawn Steel Co. vs. Director General, 93 I. C. C. 171 and Clark Bros. Bolt Co. vs. N. Y. C. R. R. Co., 103 I. C. C. 355. It seems to me that that is decisive of the question in the instant case, because there is no question but what this is nut flat material that is in question here. Now "billet" and "commodity" are the same thing so far as the rate is concerned. Billet rate is the same as commodity rate and "nut flat" rate is the same as the commodity rate.

The material in question conforms in size; it conforms in shape; it conforms in the method in which it was handled, that is, it was coiled, it conforms in that it is admitted that it was not drawn through a die, and it conformed to the theory that it might be carried in open cars rather than in closed cars. In other words, there was no fine finish in this material that would be injured by exposure to the weather, and when the material got to its destination, it had to be further treated before it could even be used, or at least before it was used to make nuts and bolts out of it. It was pickled and limed,—another process,—before they undertook to use it to make the manufactured product to go to the ultimate destination.

Then the defendant in error was driven back to the ultimate argument that it was finished. Well, the Interstate Commerce Commission has taken occasion to describe what "finished" means. 104 I. C. C. page 620.

The only answer we can get from counsel in distinguishing this case from those decided by the Interstate Commerce Commission was that **they** were not parties to that and were not bound. Well, it would be a rather singular proposition if the Interstate Commerce Commission in fixing a rate can make a rate and that does not bind anybody for the same kind of material except the parties who invoke the aid of the Commission in that particular case; if all parties would have access to the courts to change the rate already fixed in spite of the finding of the Interstate Commerce Commission. Whenever the Interstate Commerce Commission has the question squarely before it and it is within its jurisdiction to make a rate, the rate must bind those who ship material coming within one of the various schedules adopted and furnished by the Interstate Commerce Commission. I take it, that if a shipper or a common carrier is not satisfied with the rate, the proper way to change that rate is to have the question raised and to get the Interstate Commerce Commission to reverse itself or to adopt and give a different rate. It surely cannot ignore the Interstate Commerce Commission's finding because, perchance, a carrier who does not wish to conform to that rate, wants a higher one and seeks the aid of the court to get it that way, for if such were the procedure it could nullify and make ineffectual the rulings of the Interstate Commerce Commission. To fix and determine rates and to prevent discrimination and favoritism among shippers was the purpose of the Interstate Commerce Commission.

It is manifest and plain by the decision of the Interstate Commerce Commission that "nut flats" are not the finished product, and that they are entitled to be shipped at the same rate for which billet steel was shipped, or, as the Interstate Commerce Commission puts it, "commodity rate."

Now it is admitted that if the shipper of this material in question was entitled to have the rate fixed for billet steel, or commodity rate, then the payment that the Lake Erie Nut and Bolt Company made to the Pennsylvania Company paid all the freight that was due upon this shipment, and that the judgment would, in that event, be wrong.

Now we can come to no other conclusion, after familiarizing ourselves with the evidence in this case, but that the material shipped was "nut flats" and that it was unfinished; that it could not be used, or was not at least used in the condition that the consignee received it, but had to be further treated before it could be used in the manufacture of nuts; that it was shipped in open cars and was not injured by exposure to the weather in any way; and consequently, we are forced to come to the conclusion that the judgment of the court below was not supported by sufficient evidence and was contrary to the evidence and was likewise contrary to the rule of the Interstate Commerce Commission and the rate adopted by it.

The judgment of the court will, therefore, be that the judgment of the lower court be reversed and final judgment for the plaintiff in error.

Sullivan and Levine, JJ, concur.